OPINION OF THE COURT
Dickerson, J.
This appeal involves the plaintiffs request for the return of a six-carat diamond ring he allegedly gave to the defendant in contemplation of marriage. However, the defendant, the would-be bride, was legally married to another man at the time that the ring was given. The defendant nonetheless had obtained a “get,” or Jewish religious divorce, from that man. The plaintiff claims that, at the time he gave the defendant the ring in contemplation of marriage, and at the time the parties were the subject of an Orthodox Jewish wedding ceremony, he was unaware that she was legally married to another. The issues presented on appeal are whether the plaintiff established that, at the time he gave the ring to the defendant, and at the time that the parties participated in the religious wedding ceremony, he was unaware of her legal marital status, and what impact his alleged understanding had on his entitlement to the return of the ring.
The Undisputed Facts and the Prenuptial Agreement
It is undisputed that, on or about September 10, 2006 the plaintiff gave the defendant a six-carat diamond ring, which he purchased for the sum of $100,000. Thereafter, on September 20, 2006, the parties participated in an Orthodox Jewish wedding ceremony as bride and groom. Prior to that ceremony, they executed a prenuptial agreement reciting, among other things, that the plaintiff would deposit the sum of $300,000 in a joint bank account to pay for their expenses, that the parties would retain their separate property, and that, in the event of a divorce sought by either party, the plaintiff would pay to the defendant a lump sum ranging from $525,000 to $3,000,000, depending upon the length of the marriage.
At the time of the religious wedding ceremony, the defendant was still legally married to another man, although she had obtained a “get” on July 30, 2002. She did not obtain a final judgment of civil divorce from her former husband until December 27, 2007. Prior to that date, however, the parties had separated and were no longer living as a couple.
*180 The Pleadings
The plaintiff commenced the instant action, sounding, inter alia, in replevin, to recover either the ring he had given to the defendant or its value, and to recover damages for fraud. The plaintiff alleged that he had purchased the ring as an engagement ring, he had given it to the defendant in contemplation of their valid and binding marriage, he had done so based on the defendant’s false assurances that she was divorced and free to marry him, and that the defendant had accepted the ring for that purpose. The plaintiff further alleged that he subsequently learned that the defendant was still married and that his marriage to her was, therefore, a nullity. He also alleged that the parties separated on September 13, 2007 and agreed not to solemnize their relationship in a civil marriage. The plaintiff further alleged that he had demanded the return of the ring, but that the defendant refused to return it. Accordingly, he sought a judgment directing the return of the ring or, in the alternative, a judgment in the sum of $150,000, representing its fair market value. The plaintiff also asserted a cause of action to recover damages for fraud in the sum of $200,000, claiming that he had deposited the sum of $150,000 into the defendant’s personal bank account, and had allowed her to use the sum of $50,000 from their joint bank account to purchase a new car because he believed they were lawfully married.
In her answer, the defendant admitted that, in August 2006, the parties agreed to marry, that the plaintiff gave her an “engagement ring,” that the parties entered into a prenuptial agreement and then participated in a religious wedding ceremony on September 20, 2006, and that the plaintiff thereafter deposited the sum of $300,000 in a joint bank account for their expenses and the sum of $150,000 in her separate bank account. However, as an affirmative defense, the defendant alleged that the plaintiff was fully aware at all relevant times that she had not obtained a civil divorce, and that the plaintiff did not care as long as she had obtained a religious divorce. Specifically, the defendant alleged:
“32. At all times herein the Plaintiff was fully aware that the Defendant was not civilly divorced from her former husband at the time Plaintiff religiously married the Defendant, but only wanted Defendant to obtain a religious divorce, which in the Jewish religion is called a ‘Get.’ Defendant did obtain a Get before her religious marriage to Plaintiff.
*181 “33. Plaintiff is a Hasidic Jew and his only concern was that Defendant received a Get from her prior marriage, because under Jewish law, a civil divorce is not sufficient to dissolve a Jewish marriage.”
The defendant further alleged that the plaintiff fraudulently induced her to enter into the religious marriage when he had no intention of honoring the lump-sum payment provision of their prenuptial agreement because he knew that she was still married to another man under civil law.
Motion For Summary Judgment The plaintiff moved for summary judgment on the first cause of action, seeking the return of the ring or, in the alternative, on the second cause of action to recover damages representing the fair market value of the ring. In his supporting affidavit, the plaintiff averred that, both at the time when he gave the defendant the ring and when he participated in the religious wedding ceremony, he was unaware that the defendant was still legally married to another. He further claimed that the defendant had conceded in her answer that the ring was an “engagement ring,” and he insisted that the sole consideration for giving it to her was a binding marriage. Since he asserted that the religious ceremony in which he and the defendant participated was a legal nullity, he claimed that he was entitled to the return of the ring.
The plaintiff also argued that, under Civil Rights Law § 80-b, the law presumes that gifts given during an engagement period are in consideration of marriage, and the presumption can only be overcome by clear and convincing evidence. The plaintiff maintained that an award of summary judgment to him was appropriate, since the marriage was void from its inception, and that he was, therefore, entitled to the return of the ring.
In opposition to the plaintiffs summary judgment motion, the defendant conceded that she previously had been married to nonparty Howard Nass, from whom she obtained a “get” on July 30, 2002. She further admitted that she did not obtain a judgment of civil divorce from him imtil December 27, 2007, long after the September 20, 2006 religious wedding ceremony. However, the defendant insisted that the plaintiff knew that her civil divorce was not concluded at the time of their engagement, that he nevertheless told her that he only cared that she obtain a religious divorce, and that they should get married anyway. She claimed that, even though the plaintiff was “absolutely *182 aware” that her civil divorce had not been finalized, he gave her the ring, and she gave him a $25,000 Rolex watch. She further averred that the plaintiff actually came to court during her divorce proceedings to speak with her attorney and to sit in the courtroom audience to monitor the case during this period. The defendant additionally claimed that she and the plaintiff lived together and held tHemselves out as husband and wife following the religious wedding ceremony. Hence, she reasoned that, since the plaintiff knew she could not legally marry, his presentation of the ring to her was not in contemplation of a binding marriage, but was instead to induce her to participate in the religious ceremony, which she did. Accordingly, the defendant claimed that the plaintiff was not entitled to the return of the ring.
The Order Appealed From
The Supreme Court granted that branch of the plaintiffs motion which was for summary judgment on the first cause of action, and directed the defendant to return the ring to him. The Supreme Court observed, in part, as follows:
“The parties dispute . . . whether or not the plaintiff knew that the defendant was not divorced at the time of their ‘marriage.’ The plaintiffs affidavits clearly state and unequivocally say that he did not. The Court has carefully reviewed the affidavit of the defendant in opposition, as well as that submitted by defendant’s matrimonial counsel. Both affidavits aver that not only did the plaintiff know about the lack of the civil divorce, he actively participated in it by attending court sessions and conferring with the defendant’s divorce attorney. However this Court notes, with some interest, that neither affidavit indicated] exactly when this participation took place, i.e. before or after September of 2006. This lack of specificity gives credence to the plaintiffs position that he did not find out about the lack of divorce until after their ‘marriage.’ ”
Discussion
At the outset, since the defendant was still legally married to another man at the time of the religious wedding ceremony in which the parties participated, the parties’ attempt to marry was void from its inception (see Landsman v Landsman, 302 *183 NY 45, 48 [1950]; Wehner v Wehner, 66 NYS2d 703, 704 [1946]), and such a marriage cannot be retroactively validated by estoppel, by mutual agreement, or by the parties’ conduct in holding themselves out as husband and wife (see Schmidt v Schmidt, 195 Misc 366, 367 [1949]; Brownell v Brownell, 74 NYS2d 136, 138 [1947]; People v Kay, 141 Misc 574, 576 [1931]).
New York’s former so-called “anti-heart balm” statute (see former Civ Prac Act, art 2-A, § 61-a et seq.; see also Tuck v Tuck, 14 NY2d 341, 343 [1964]) abolished all causes of action to recover damages arising from breaches of contract to marry, including those to recover real and personal property given in contemplation of marriage. However, due to perceived abuses and potential for fraud, the Legislature subsequently enacted Civil Rights Law § 80-b to provide, in effect, that “a person, not under any impediment to marry, will no longer be denied the right to recover property given in contemplation of a marriage which has not occurred” (Gaden v Gaden, 29 NY2d 80, 85 [1971] [citation omitted]; see Civil Rights Law § 80-b [“(n)othing in this article contained shall be construed to bar a right of action for the recovery of a chattel. . . when the sole consideration for the transfer of the chattel . . . was a contemplated marriage which has not occurred”]). Moreover, Civil Rights Law § 80-b is a “no-fault” statute, permitting the recovery of property given in contemplation of a marriage that does not take place, regardless of who is responsible for the failure of the marriage to go forward (see Gaden v Gaden, 29 NY2d at 88 [“The clear purpose of section 80 b is to return the parties to the position they were in prior to their becoming engaged, without rewarding or punishing either party for the fact that the marriage failed to materialize”]; Gagliardo v Clemente, 180 AD2d 551 [1992] [“Whether plaintiff was at fault for the breakup of the engagement is wholly irrelevant to his right to recover possession of an engagement ring”]).
However, while, as a general matter, a party not under any impediment to marry may maintain an action to recover property, such as an engagement ring, given in contemplation of marriage where the contemplated marriage does not come to pass (see Civil Rights Law § 80-b; see also Gaden v Gaden, 29 NY2d at 85), the giving of such property with the knowledge of the existence of an impediment to a lawful marriage will preclude such recovery. Hence, in Lowe v Quinn (27 NY2d 397 [1971]), the plaintiff, a married man, gave the defendant an engagement ring upon her promise to wed him when and if he *184 became free to do so, since he and his wife had been living apart for years and were contemplating a divorce. One month after receiving the ring, the defendant broke off the relationship and refused to return the ring. The plaintiff commenced an action to recover it, but the Court of Appeals made clear that overriding policy concerns regarding the validity of marriages barred such recovery:
“An engagement ring ‘is in the nature of a pledge for the contract of marriage,’ and, under the common law, it was settled—at least in a case where no impediment existed to a marriage—that, if the recipient broke the ‘engagement,’ she was required, upon demand, to return the ring on the theory that it constituted a conditional gift. However, a different result is compelled where, as here, one of the parties is married. An agreement to marry under such circumstances is void as against public policy, and it is not saved or rendered valid by the fact that the married individual contemplated divorce and that the agreement was conditioned on procurement of the divorce. Based on such reasoning, the few courts which have had occasion to consider the question have held that a plaintiff may not recover the engagement ring or any other property he may have given the woman” (id. at 400 [citations omitted]).
Although the plaintiff in Lowe argued that Civil Rights Law § 80-b should be interpreted to permit the recovery of the ring even though he was married at the time he gave it to the defendant, the Court of Appeals flatly rejected the argument, noting that “[t]his statute . . . does not alter the settled principle denying a right of recovery where either of the parties to the proposed marriage is already married” (id. at 401-402).
In the years since the Lowe decision, the overwhelming majority of New York courts have continued to hold that where a party gives an engagement gift to another with knowledge that an impediment to a lawful marriage exists, whether the impediment is on the part of the donor or the recipient, no action will lie to compel a return of the property on the ground that the marriage did not take place (see e.g. Raji v Nejad, 256 AD2d 12, 13 [1998] [“The causes of action under Civil Rights Law § 80-b to recover gifts in contemplation of a marriage that did not occur were properly dismissed on the ground that plaintiff was married at the time the gifts were made, and it does not avail *185 plaintiff that his divorce action was pending at the time”]; Leemon v Wicke, 216 AD2d 272, 273 [1995] [“where, as here, the party is already married when the property is given in contemplation of marriage to another, recovery is barred”]; Callahan v Parker, 12 Misc 3d 1193[A], 2006 NY Slip Op 51563[U] , *2 [Sup Ct, NY County 2006, Acosta, J.] [“when one of the parties is married, an agreement to marry is void as against public policy” and a claim for the return of an engagement ring will not lie]; Marshall v Cassano, 2001 NY Slip Op 40320[U], *2 [2001] [“an agreement to marry, where one of the parties is already married, is void as against public policy and no recovery may be had of any engagement ring or other property”]).
The case of Shoenfeld v Fontek (67 Misc 2d 481 [1971]) is directly on point. In that case, the unmarried male plaintiff sought to recover property he gave to the married female defendant in contemplation of their marriage, which ultimately did not take place. The defendant argued that no recovery was permissible because she was already married, and an impediment to the marriage therefore existed. However, in line with Lowe v Quinn and its progeny, the Supreme Court determined that the rule precluding recoveiy in such cases “is not intended to bar an action for the return of property by an innocent party, not aware of the other’s disability to contract a marriage at the time of the ‘engagement’ ” (id. at 482). Furthermore, the Supreme Court reaffirmed the rule that “[w]here both parties are aware at the time they agree to marry that one of them is still bound by a prior undissolved marriage, the bar of Lowe v. Quinn ... is operative” (id.). Since the parties in the Shoenfeld case presented conflicting evidence as to whether the plaintiff was aware of the defendant’s existing marriage at the time of their agreement to marry, the Supreme Court held that the issue could not be resolved on a summary judgment motion.
Here, the plaintiff established his prima facie entitlement to judgment as a matter of law by averring in his affidavit that he gave the ring to the defendant in contemplation of their valid and binding marriage and that, unbeknownst to him, the defendant was still legally married to another man and could not validly marry him. However, contrary to the Supreme Court’s determination, the defendant raised a triable issue of fact by submitting her own affidavit and that of her matrimonial attorney, asserting that, at the time the plaintiff discussed marriage with the defendant and presented her with the ring, the plaintiff was well aware of her marital status, and even *186 participated indirectly in her divorce proceedings. While the Supreme Court correctly observed that the opposing affidavits did not identify the precise dates of the plaintiffs participation in the defendant’s divorce proceedings, the affidavits clearly alleged that the plaintiff knew of the defendant’s existing marriage before he gave the defendant the ring. The defendant further claimed in her affidavit that the plaintiff presented her with the ring not in contemplation of a legally valid civil marriage, but in contemplation of a religious wedding ceremony. She claimed that he was only concerned that the defendant obtain a religious divorce, and that he did not care about a civil divorce.
The conflicting affidavits presented a stark credibility question, which the Supreme Court summarily and impermissibly resolved in the plaintiffs favor. “A court may not weigh the credibility of witnesses on a motion for summary judgment, ‘unless it clearly appears that the issues are not genuine, but feigned’ ” (Conciatori v Port Auth. of N.Y. & N.J., 46 AD3d 501, 503 [2007], quoting Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439, 441 [1968]; see Ferrante v American Lung Assn., 90 NY2d 623, 631 [1997]; S.J. Capelin Assoc, v Globe Mfg. Corp., 34 NY2d 338, 341 [1974]). Here, there is no basis to conclude that the issues presented are not genuine. Accordingly, in light of the existence of these triable issues of fact, the Supreme Court should have denied that branch of the plaintiffs motion which was for summary judgment on the first cause of action and left for trial the resolution of issues of credibility (see Lawson v Rutland Nursing Home, Inc., 65 AD3d 572, 573 [2009]; Cassidy v Allstate Ins. Co., 63 AD3d 869 [2009]; 6243 Jericho Realty Corp. v AutoZone, Inc., 27 AD3d 447, 449 [2006]).
Conclusion
Since there remains a triable issue of fact as to whether the plaintiff knew of an impediment to the proposed marriage at the time he gave the defendant the diamond ring, the Supreme Court should have denied that branch of the plaintiffs motion which was for summary judgment on the first cause of action. Accordingly, the order is reversed, on the law, that branch of the plaintiffs motion which was for summary judgment on the first cause of action is denied, and the provision directing the defendant to return the diamond ring to the plaintiff is vacated.
Santucci, J.E, Chambers and Sgroi, JJ., concur.
Ordered that the order is reversed, on the law, with costs, that branch of the plaintiffs motion which was for summary *187 judgment on the first cause of action is denied, and the provision directing the defendant to return the diamond ring to the plaintiff is vacated.