# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00890-SCT

*CHRISTOPHER JOSEPH CUMMINS*

*v.*

*LEAH JORDAN GOOLSBY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/2017 |
| TRIAL JUDGE: | HON. JACQUELINE ESTES MASK |
| TRIAL COURT ATTORNEYS: | JOHN A. FERRELL |
| | WALTER ALAN DAVIS |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WALTER ALAN DAVIS |
| ATTORNEY FOR APPELLEE: | JOHN A. FERRELL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/18/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. Dr. Christopher Cummins—a married man who was separated but not divorced from his wife—began a romantic relationship with one of his employees, Leah Jordan Goolsby (Jordan). The two began living together, had a child, and became engaged to one another. But Dr. Cummins never divorced his wife. And he and Jordan never married. Jordan eventually ended their relationship and kept the engagement ring and wedding ring he gave her. When Jordan filed a paternity suit for child-support payments for their child, Dr. Cummins counterclaimed for the rings, which together were worth $11,435. Alternatively,

he argued that if Jordan was awarded the rings, their value should be deducted from any child-support obligation.

¶2. The chancellor found Dr. Cummins had made a completed inter vivos gift. So she awarded the rings to Jordan. The chancellor found that the rings were not a conditional gift, because the condition of marriage was not met, since Dr. Cummins had remained married to his wife. The chancellor certified the ruling on the ring issue as a final judgment, and Dr. Cummins appealed.

¶3. After review, we agree the fatal fact to Dr. Cummins's claim was his marriage to another woman. Because Dr. Cummins could not legally marry at the time he gave the engagement rings, he cannot argue to a court of equity that he is entitled to get the rings back, since the condition of marriage never took place. Because Dr. Cummins has no right to recover the rings due to his unclean hands, we affirm.

**Background Facts and Procedural History**

¶4. Jordan started working at Dr. Cummins's medical practice in July 2013. In August, although he was married but separated from his wife, he and Jordan became romantically involved and moved in together. The couple then had a child on June 29, 2015. All during this time, Dr. Cummins's divorce was supposedly pending but never was finalized.[1] Still, he had given Jordan an engagement ring and a wedding ring allegedly worth $11,435.

¶5. But Dr. Cummins remained married to his wife and failed to get a divorce. So Jordan broke off the engagement in September 2016. Jordan also claimed that she no longer wished

---

[1] Nothing in this record indicates the status of Dr. Cummins's divorce.

2

to marry Dr. Cummins "based upon his erratic and abusive conduct and the decision to break off the engagement was mutual."

¶6.     On March 1, 2017, Jordan filed a petition to establish paternity, among other relief, for her and Dr. Cummins's child. On April 21, 2017, Dr. Cummins responded and filed a counterclaim for return of the rings. Alternatively, he asserted he was entitled to a credit for the rings' value against any financial obligation he might be ordered to pay. The Prentiss County Chancery Court heard arguments on Dr. Cummins's counterclaim on May 15, 2017. Dr. Cummins argued that, under *Cooley v. Tucker*, the rings were a conditional gift, and the condition—marriage—was never met. *See Cooley v. Tucker*, 200 So. 3d 474 (Miss. Ct. App. 2016). Thus, Dr. Cummins argued the gift was incomplete and the rings should be returned to him. Jordan countered that when Dr. Cummins gave her the rings, the condition could not be met because he was still married to his wife. In fact, he was still married at the May 15, 2017 hearing.

¶7.     The chancellor ruled that when Dr. Cummins gave the rings to Jordan, the condition to marry could not be completed because he remained married to his wife. Therefore, Jordan was awarded the rings as a completed inter vivos gift. The trial court entered its Rule 54(b) Final Judgment on Limited Issue the next day. Dr. Cummins filed his Notice of Appeal on June 23, 2017. The single issue on appeal is whether the chancellor erred by awarding the rings to Jordan.

**Discussion**

¶8.     We will not disturb a chancellor's findings unless they are manifestly wrong, clearly

3

erroneous, or applied the wrong legal standard. *McNeil v. Hester*, 753 So. 2d 1057, 1063 (Miss. 2000) (citing *Bank of Miss. v. Hollingsworth*, 609 So. 2d 422, 424 (Miss. 1992)). But questions of law are reviewed de novo. *Id.* (citing *Consol. Pipe & Supply Co. v. Colter*, 735 So. 2d 958, 961 (Miss. 1999)). As part of this de novo review, this Court may affirm the chancellor's judgment if the right result was reached, even if the chancellor reached the result for the wrong reason. *Davis v. City of Jackson*, 240 So. 3d 381, 384 (Miss. 2018) (citing *Methodist Hosp. of Hattiesburg, Inc. v. Richardson*, 909 So. 2d 1066, 1070 (Miss. 2005)). Because Dr. Cummins was already married when he gave Jordan the rings, the chancellor reached the right result when she denied his claim that the rings had to be returned.

¶9. Dr. Cummins argues that the chancellor failed to follow the *Cooley v. Tucker* decision. In that case, the Court of Appeals applied the following test to determine whether an engagement ring was a completed inter vivos gift: "(1) a donor competent to make a gift[;] (2) a voluntary act of the donor with donative intent[;] (3) the gift must be complete with nothing else to be done[;] (4) there must be delivery to the donee[; and] (5) the gift must be irrevocable.'" *Cooley*, 200 So. 3d at 476 (quoting *Johnson v. Collins*, 419 So. 2d 1029, 1030 (Miss. 1982)). Looking specifically at the third factor, the *Cooley* Court held that the engagement ring was an inter vivos gift, but it was conditioned upon the parties' getting married. *Id.* And because the parties did not get married, the condition was unfulfilled and the gift was incomplete. *Id.* Thus, the former boyfriend was entitled to the return of the ring. *Id.* Dr. Cummins argues that, because he and Jordan did not get married, he is in the same position as the boyfriend in *Cooley*. He claims the third element of a completed inter vivos

4

gift—that the gift was complete and nothing was left to be done—had not been met. So, he was entitled to the return of the rings.

¶10.    But this case is *not* like ***Cooley***.

¶11.    First, we would note that the context is different. ***Cooley*** involved a replevin action filed by the former boyfriend after the dating relationship had ended. In this case, it was only after Jordan sued Dr. Cummins to establish paternity and to receive financial support for their child that Dr. Cummins asserted his counterclaim to the rings and specifically plead that the value of the rings should be credited against any financial obligation he owed to Jordan as their child's father. Although the child-support issue is not before this Court on appeal, we find it worth noting that child-support benefits belong to the child, not to the custodial parent who receives the benefits under a fiduciary duty to use them for the benefit and protection of the child. ***Edmonds v. Edmonds***, 935 So. 2d 980, 986 (Miss. 2006) (citing ***Caldwell v. Caldwell***, 579 So. 2d 543, 549 (Miss. 1991)). So, even if Dr. Cummins had a right to the rings or to the rings' value, by no means is he entitled to the ultimate remedy he seeks—a reduction in child support based on the broken engagement.

¶12.    Second, and more importantly, unlike the boyfriend in ***Cooley***, Dr. Cummins was married when he gave Jordan the rings. In fact, he was still married when he asked the chancery court to order Jordan to give them back. As the chancellor recognized, Dr. Cummins's marriage is significant because he conditioned his gift on something he legally could not do—marry Jordan. *See* Miss. Code Ann. § 97-29-13 (Rev. 2014). And now he argues this very condition—or the failure thereof—is what entitles him to the rings.

¶13. "[O]ne of the maxims of equity is, 'He who comes into equity must come with clean hands.'" ***Thigpen v. Kennedy***, 238 So. 2d 744, 746 (Miss. 1970). And conditioning a gift on marriage when one cannot lawfully marry violates public policy and constitutes unclean hands. *See, e.g.*, ***Morgan v. Wright***, 133 S.E.2d 341, 343 (Ga. 1963) (holding that an action to recover an engagement ring given to a married woman was barred by the doctrine of unclean hands). Dr. Cummins could not legally marry Jordan at the time he gave her the rings. So, he cannot now bring an action for the rings to be returned because the condition of marriage never occurred. *See* ***Lipschutz v. Kiderman***, 76 A.D.3d 178, 184 (N.Y. App. Div. 2010) ("[W]here a party gives an engagement gift to another with knowledge that an impediment to a lawful marriage exists, whether the impediment is on the part of the donor or the recipient, no action will lie to compel a return of the property on the ground that the condition of marriage did not take place.").

¶14. Because, unlike the boyfriend in ***Cooley***, Dr. Cummins had no right to have the rings returned as part of his paternity dispute with Jordan, the chancellor did not err when she awarded the rings to Jordan. We affirm the chancellor's judgment.

¶15. **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. COLEMAN, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY ISHEE, J.; RANDOLPH, P.J., AND BEAM, J., JOIN IN PART.**

**COLEMAN, JUSTICE, SPECIALLY CONCURRING:**

¶16. The act of giving an engagement ring, wedding band, or the like defies easy categorization. Because the parties in the instant case stipulate that Cummins intended the

rings as a conditional gift rather than consideration given in return for a promise to marry, I agree with the majority opinion. However, I write to point out that under still-controlling Mississippi law, civil actions for the breach of the promise to marry continue to be governed by contract law rather than the law of gifts.

¶17. The acceptance of a promise to marry forms a contract, and for decades Mississippi law has treated the breach of such a promise under contract law. In *Cooley v. Tucker*, 200 So. 3d 474 (Miss. Ct. App. 2016), a sharply divided Mississippi Court of Appeals, however, analyzed the case under the law of conditional and *inter vivos* gifts rather than under the law of contracts. In *Cooley*, the trial court based its decision on the law of conditional gifts, and the parties argued the law of conditional gifts in their briefs to the Court of Appeals, so the resulting opinion is not surprising. However, Judge Carlton, who wrote a dissent, raised still-viable precedent from the Mississippi Supreme Court in which it had held that questions arising from the breach of a promise to marry are analyzed pursuant to contract law.

¶18. The opening sentence of the Court's opinion in *Carney v. McGilvray*, 152 Miss. 87, 119 So. 157 (1928), reads, "Mrs. Cordelia Carney sued Duncan McGilvray in the circuit court of Forrest county on a breach of contract—his failure to carry out a promise of marriage." The defenses raised in the trial court included the absence of good faith on the part of the plaintiff and an allegation that the contract was never formed because there was no offer and acceptance. *Id.* at 158-159.

¶19. More factually apt is *Ashley v. Dalton*, 119 Miss. 672, 81 So. 488 (1919). There, a breach of an engagement occurred because a man who, at the time of entering the

engagement and at the time of the action, was a married man; the man's betrothed had been unaware of his marriage. *Id.* at 488. The Court held that the woman could recover from the man because "[t]he fact that the promisor was already married at the time of making the promises furnishes no defense to an action for a breach of promise, *where this fact was unknown to the promisee*." *Id.* (emphasis added). The Court continued that a woman may maintain an action for breach of promise, "notwithstanding the fact that he was married to another woman at the time the contract was made, *if such fact was unknown to the woman at the time of the engagement*." *Id.* (emphasis added).

¶20. Although the Court of Appeals in *Cooley* chose not to follow *Carney* and *Ashley* in that it did not analyze the issue presented under contract law, we never have overruled those cases and, in a case lacking the stipulations found in the record here, they might have well controlled.

**ISHEE, J., JOINS THIS OPINION. RANDOLPH, P.J., AND BEAM, J., JOIN THIS OPINION IN PART.**