# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-01772-SCT

*IN THE MATTER OF THE ESTATE OF JULISA MATUTE, DECEASED: UNIVERSITY OF SOUTH ALABAMA, BY AND THROUGH ITS DIVISION, USA HEALTH UNIVERSITY HOSPITAL*

*v.*

*JULITA PEREZ*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/2018 |
| TRIAL JUDGE: | HON. SANFORD R. STECKLER |
| TRIAL COURT ATTORNEYS: | DAVID PAUL PITRE |
| | JIM L. DAVIS, III |
| | MARK EDWARD NORTON |
| | THOMAS RICHARD BOLLER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | THOMAS RICHARD BOLLER |
| ATTORNEY FOR APPELLEE: | JIM L. DAVIS, III |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 02/20/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     University of South Alabama (USA) appeals the chancellor's denial of its probated claim against the Estate of Julisa Matute (the Estate).  While the chancellor properly denied the probated claim as uncollectable, the chancellor erroneously found that USA's probated claim was invalid and erroneously ruled on USA's hospital-lien claim.  As a result, the chancery court's judgment is affirmed in part and reversed and rendered in part.

## FACTS AND PROCEDURAL HISTORY

¶2.   Sixteen-year old Julisa Matute along with her sister and father were involved in a motor-vehicle accident in Harrison County, Mississippi. Julisa was transported to Mobile, Alabama, and was admitted to University of South Alabama Medical Center, a hospital operated by USA. On February 11, 2016, Julisa died intestate. Julisa's mother, Julita Perez, and Julisa's sister Soila Matute executed an Authorization for Donation of Anatomical Gifts for the donation of Julisa's organs with the Alabama Organ Center (AOC).

¶3.   At the time of her death, Julisa was a resident of Harrison County, Mississippi. The Estate was opened August 5, 2016, in the Chancery Court of the First Judicial District of Harrison County. Julisa's mother was appointed administratrix of the Estate. Notice to creditors was issued June 15, 2017.

¶4.   On June 26, 2017, USA probated a claim against the Estate for $52,033 in medical expenses. The probated claim was later amended to $48,000.

¶5.   On May 7, 2018, the Estate filed a "complaint to contest illegal probated claim and compulsory counterclaim." In the complaint, the Estate alleged that before Julisa's death, USA representatives approached Julisa's family and asked that they donate her organs and, in turn, Julisa's hospital bill incurred at USA would be "totally wiped out and not be collected." As a result of this alleged agreement with USA, the Estate contested USA's probated claim and asserted that the "probated claim [wa]s null and void and uncollectable." In its counterclaim, the Estate alleged emotional distress, fraud, and punitive damages because, according to the Estate, "[t]he hospital told [Julisa's family] that the bill would be

2

wiped clean for allowing them to have [Julisa's] organs . . . ."

¶6.    USA's counsel filed a general notice of appearance on May 8, 2018, the day after the Estate's complaint and counterclaim were filed. Then, on June 11, 2018, USA filed a special limited appearance for the purpose of objecting to jurisdiction or, in the alternative, a motion to dismiss. In that motion, USA asserted that as an Alabama state entity, it was entitled to sovereign immunity. As a result, USA claimed that the chancery court lacked jurisdiction over USA and that the counterclaim filed by the Estate against USA should be dismissed. The chancery court denied USA's motion.

¶7.    A wrongful-death lawsuit related to the motor-vehicle accident was filed by the Estate. A settlement was reached among the parties in September 2018.[1] Julisa's heirs were established by judgment entered December 4, 2018. The judgment ordered that "[a]ny and all claims [related] to the wrongful death of Julisa . . . and any interest in same [were] . . . owned by her surviving heirs-at-law and wrongful death beneficiaries . . . ."

¶8.    A hearing was held December 6, 2018, on USA's contested probated claim, at which Julisa's mother and a representative from the AOC testified. Following the hearing, the chancellor entered a judgment approving the Estate's Petition to Receive First and Final

---

[1] USA asserts this wrongful-death settlement was entered into without its consent. The settlement funds have not been paid but, instead, were interpleaded into the United States District Court for the Southern District of Mississippi. *See Safeco Ins. Co. of Ill. v. Estate of Matute*, No. 1:17-cv-67-LG-RHW, 2019 WL 3240073 (S.D. Miss. July 19, 2019). USA objected to the court's jurisdiction. The district court transferred the case to the United States District Court for the Southern District of Alabama, where it is currently pending. *Id.*

3

Accounting, Discharge Administratrix, and Close Estate.[2] In the judgment, the chancellor determined that "the claims of [USA] and Garden Park Hospital [were] . . . uncollectable because no assets exist to pay them and what assets the Estate has are exempt from the claim of creditors."

¶9.    The chancellor also entered an order granting the Estate's petition to approve settlement of claims of wrongful-death beneficiaries of Julisa. In the order, the chancellor found that the chancery court had jurisdiction over USA's "probated hospital lien claim," that the "lien d[id] not have priority under Mississippi law and public policy," and that USA was "not entitled to any recovery from the settlement of the [wrongful-death] claims . . . ."

¶10.    USA filed a motion to alter or amend the order granting the Estate's Petition to Approve Settlement of Claims of Wrongful Death Beneficiaries of Julisa and asserted that the chancellor's reference to a "hospital lien claim" was erroneous. The chancellor denied the motion. USA timely appealed.[3] On appeal, USA argues: (1) that the chancellor erred by denying its claim of sovereign immunity, (2) that the chancellor erred by finding its probated claim against the Estate invalid, and (3) that the chancellor erred by entering an order concerning the validity of a hospital lien.

**STANDARD OF REVIEW**

---

[2] The parties agree that this judgment also dismissed the Estate's counterclaim filed against USA.

[3] Specifically, USA appealed the judgment regarding the Estate's Petition to Receive First and Final Accounting, Discharge Administratrix, and Close Estate as well as the judgment denying USA's Motion to Alter or Amend the Order Granting the Estate's Petition to Approve Settlement of Claims of Wrongful Death Beneficiaries of Julisa Matute.

4

¶11. "We will not disturb a chancellor's findings unless they are manifestly wrong, clearly erroneous, or [the chancellor] applied the wrong legal standard." *Cummins v. Goolsby*, 255 So. 3d 1257, 1258 (Miss. 2018) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1063 (Miss. 2000)). "But questions of law are reviewed de novo." *Id.* (citing *McNeil*, 753 So. 2d at 1063).

## ANALYSIS

> I.  *Whether the chancellor erred by denying USA's claim of sovereign immunity.*

¶12. USA first asserts that "the [c]hancellor should never have considered any of the Estate's claims brought against USA, since it is a sovereign entity of the State of Alabama and [is] immune."

¶13. The Eleventh Amendment of the United States Constitution provides,

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The Eleventh Amendment confirmed that the Constitution was not meant to 'rais[e] up' any suits against the States that were 'anomalous and unheard of when the Constitution was adopted.'" *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1496, 203 L. Ed. 2d 768 (2019) (alteration in original) (quoting *Hans v. Louisiana*, 134 U.S. 1, 18, 10 S. Ct. 504, 33 L. Ed. 842 (1890)). The United States Supreme Court emphasized that "[t]he [Eleventh] Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Id.* at 1496

5

(internal quotation marks omitted) (quoting *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993)). "Consistent with this understanding of state sovereign immunity, the Court has held that the Constitution bars suits against nonconsenting States in a wide range of cases," including "suits by private parties against a State in its own courts." *Id.* (citing *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999)).

¶14. The chancellor found that the chancery court had jurisdiction to decide the validity of USA's probated claim against the Estate. Notably, at the hearing, USA agreed that the chancery court had jurisdiction to adjudicate the probated claim filed by USA against the Estate. USA argued, however, that it was entitled to sovereign immunity regarding the Estate's counterclaim. While USA may have been entitled to sovereign immunity on those claims asserted in the Estate's counterclaim, the record shows that what was before the chancery court and what is before this Court on appeal is the validity of USA's probated claim, not the Estate's counterclaim. Indeed, the Estate did not pursue its counterclaim at the hearing. Moreover, both parties agree that the Estate's counterclaim against USA was dismissed with the judgment approving the Petition to Receive First and Final Accounting, Discharge Administratrix, and Close Estate.

¶15. It is undisputed that the chancery court has jurisdiction over USA's probated claim. After the Estate was opened and notice was sent to the creditors, USA filed a probated claim against the Estate in the Harrison County Chancery Court under Mississippi Code Section 91-7-149 (Rev. 2018). Thereafter, counsel entered a general notice of appearance on behalf

6

of USA. The Estate disagreed with USA's probated claim and contested the claim under Mississippi Code Section 91-7-165 (Rev. 2018).

¶16. This Court finds that the chancellor had jurisdiction to adjudicate the probated claim filed by USA and contested by the Estate. Accordingly, the chancellor's exercise of jurisdiction over the contested probated claim is affirmed. Because USA is not entitled to sovereign immunity on its probated claim against the Estate, the chancellor did not err by denying USA's sovereign-immunity claim.

> II. *Whether the chancellor erred by denying USA's probated claim as invalid.*

¶17. The Estate asserts that, before Julisa's death, USA representatives approached Julisa's family and asked that they donate her organs for the benefit of others and, in turn, Julisa's hospital bill with USA would be "totally wiped out and not . . . collected." Julisa's mother and sister agreed to donate Julisa's organs. But the record shows that this agreement was not with USA but with the AOC.

¶18. The chancellor found that the AOC was an "apparent agent[]" of USA because USA "permitted the use of its facilities, its staff to harvest these organs and didn't make it clear to [Julisa's family] as to who represented who." As a result, the chancellor concluded that USA's probated claim for medical expenses against the Estate was invalid and denied the claim.

¶19. USA argues that the chancellor erroneously concluded that the AOC was an apparent agent of USA and erroneously considered "the [Estate's] theory that there was a contract between [Julisa's family] and USA for the family . . . to receive a valuable consideration in

7

exchange of the donation of [Julisa's] organs . . . ." This Court agrees.

¶20.    At the hearing, Melissa Allegri, a social worker and the Family Support Coordinator with the AOC, testified that she was the "sole interviewer for AOC insofar as the organ donation question with the Perez family." Allegri discussed organ donation with Julisa's mother and sister and explained the authorization form to them. According to Allegri, Julisa's mother and sister both answered narrative questions in response to the authorization form. Importantly, Allegri testified that she is not employed with USA, does not work for USA in any capacity, and is not subject to control or authority by USA.

¶21.    The authorization form, signed by Julisa's mother and sister, clearly states that the agreement to donate Julisa's organs is with the AOC. Specifically, the authorization form states in relevant part as follows:

> AUTHORIZATION FOR DONATION OF ANATOMICAL GIFTS
>
> I understand the gifts are given to the Alabama Organ Center (AOC), the Alabama Eye Bank (AEB), and/or to any researcher, educator, person, or company who works with the AOC or AEB.
>
> . . . .
>
> I understand the Alabama Organ Center is responsible for all costs directly associated with the recovery of organs and tissues. The Alabama Eye Bank is responsible for all costs associated with the recovery of corneas or eyes. By Alabama law, the AOC and AEB are prohibited from providing any incentive for the donation. These organizations are reimbursed for expenses associated with recovery.
>
> . . . .
>
> I have been given the opportunity to ask questions and have received satisfactory answers to these questions. If I have further questions about these gifts, I may contact the recovery organization.

8

I acknowledge that I have read (or had read to me) this document in its entirety, and that I fully understand it.

¶22. When asked if she told Julisa's mother or sister that if Julisa's organs were donated, USA's entire hospital bill would be wiped out, Allegri responded, "[a]bsolutely not." Again, the record reflects that Allegri is not employed with and does not work for USA. Regarding the payment of hospital expenses, Allegri explained that as noted on the authorization form, the AOC cannot provide any incentive, financial or otherwise, in exchange for the donation of organs. Allegri further explained that the AOC only pays for those hospital expenses associated with the harvesting of the organs. The process of harvesting the organs is not conducted by USA's surgeons, but by the organ recipient's doctors.

¶23. There is no evidence of a contract or an agreement between Julisa's family and USA regarding the donation of Julisa's organs. The record clearly establishes that the agreement to donate Julisa's organs was between Julisa's family and the AOC. Additionally, there is no evidence of an agency relationship between USA and the AOC. Instead, the record reflects that the AOC is an independent organization with no affiliation with or control by USA. Moreover, there is no evidence of any agreement with USA or the AOC that in exchange for Julisa's organs, Julisa's entire hospital bill would be paid in full. In fact, any such agreement would be illegal under federal law. *See* 42 U.S.C.A. § 274e(a) (Westlaw through Pub. L. No. 116-91) ("It shall be unlawful for any person to knowingly acquire, receive, or otherwise transfer any human organ for valuable consideration for use in human transplantation if the transfer affects interstate commerce."). Thus, the chancellor was manifestly wrong and clearly erroneous in finding that USA's probated claim was invalid due

9

to an alleged agreement between Julisa's family and USA that in exchange for Julisa's organs, USA's entire hospital bill would be "wiped out and not . . . collected." Accordingly, the chancellor abused his discretion by denying USA's probated claim as invalid on this basis.

¶24. But it appears that USA's probated claim, while not invalid, was properly denied as uncollectable. In the judgment on the Petition to Receive First and Final Accounting, Discharge Administratrix, and Close Estate, the chancellor found that "the claims of [USA] and Garden Park Hospital [were] . . . uncollectable because no assets exist to pay them and what assets the Estate has are exempt from the claim of creditors." The chancellor noted that the only asset of the Estate was $14,381.83 in insurance proceeds received in June 2018 as a result of an unrelated motor-vehicle accident in January 2015. After payment of attorneys' fees, the balance remaining in the Estate was $8,956.82. The chancellor found this amount to be exempt from creditors under Mississippi Code Section 85-3-1(a) (Supp. 2019) and Mississippi Code Section 85-3-17 (Rev. 2011).

¶25. Under Section 85-3-1(a), tangible personal property not exceeding $10,000 is exempt. Additionally, under Section 85-3-17, "[t]he proceeds of any judgment not exceeding Ten Thousand Dollars ($10,000) recovered by any person on account of personal injuries sustained, shall inure to the party or parties in whose favor such judgment may be rendered, free from all liabilities for the debts of the person injured." Accordingly, the remaining proceeds in the Estate are exempt from the Estate's creditors. Miss. Code Ann. §§ 85-3-1(a), -17. Thus, although the chancellor erred by denying USA's probated claim as invalid, the

10

denial of such valid claim was nevertheless proper because the claim is uncollectable.

> III. *Whether the chancellor erred by entering an order that found USA's hospital lien invalid.*

¶26. In the "Order Granting Petition to Approve Settlement of Claims of Wrongful Death Beneficiaries of Julisa Matute," the chancellor found as follows:

> All expenses of last illness of the Decedent, including medical, funeral and headstone costs, have been paid and the Petitioner is not aware of any unpaid expenses or liens, except for a claim made by [USA] for medical expenses. The Estate . . . contends this *hospital lien claim* is invalid and has set forth its complete position in other pleadings/submissions herein. The Court finds by separate order that it has jurisdiction over the *probated hospital lien claim* of [USA] and that they are not entitled to any recovery from the settlement of the wrongful death claims . . . set forth herein.

(Emphasis added.)

¶27. It appears that the order mistakenly refers to USA's probated claim for medical expenses as a "hospital lien claim." At the hearing, USA's counsel brought this to the chancellor's attention and recommended that the phrase "hospital lien claim" be removed and replaced with "probated claim." The chancellor responded, "I think it is a probated claim against the estate. I mean, that's what we're doing here. Whether it's a lien or not – I'm not sure . . . ." Despite this statement, the chancellor declined to modify the order and later denied USA's motion to alter or amend the order. The final paragraph of the order reads, in part,

> This Court has jurisdiction over the *probated hospital lien claim* of [USA], that its lien does not have priority under Mississippi law and public policy and it is not entitled to any recovery from the settlement of the claims . . . set forth herein.

(Emphasis added.)

11

¶28.    USA argues that the chancellor's reference to a "hospital lien claim" was erroneous. This Court agrees. The record shows that USA filed a probated claim against the Estate for medical expenses. This probated claim is separate and distinct from a hospital lien. Under Alabama statutory law, a "hospital lien" is granted to

> [a]ny person, firm, hospital authority, or corporation operating a hospital in the state . . . for all reasonable charges for hospital care, treatment, and maintenance of an injured person who entered such hospital within one week after receiving such injuries, upon any and all actions, claims, counterclaims, and demands accruing to the person to whom such care, treatment or maintenance was furnished, or accruing to the legal representatives of such person, and upon all judgments, settlements, and settlement agreements entered into by virtue thereof on account of injuries given rise to such actions, claims, counterclaims, demands, judgments, settlements, or settlement agreements and which necessitated such hospital care, subject, however, to any attorney's lien.

Ala. Code § 35-11-370 (West, Westlaw through Act 2019-540).

¶29.    As both parties acknowledge, Mississippi has no comparable statute creating a hospital lien. As a result, the chancellor's findings regarding the validity of a hospital lien claim were erroneous because no such lien was asserted by USA in this cause, no evidence was offered to establish that such a lien had been perfected under Alabama law,[4] and the chancellor had no jurisdiction to determine the validity or effect of any such Alabama statutorily created hospital lien. The only claim before the chancellor was the probated claim for medical services filed by USA against the Estate. Accordingly, the chancellor erred by entering an order regarding the validity of USA's "hospital lien claim." The chancellor further erred by denying USA's motion to alter or amend the order.

---

[4] The record shows that after the hearing, USA perfected a hospital lien against the wrongful-death settlement proceeds. That action is currently pending in Alabama.

12

**CONCLUSION**

¶30.   USA is not entitled to sovereign immunity on its probated claim against the Estate. Thus, the chancellor's exercise of jurisdiction over the probated claim is affirmed.  The chancellor abused his discretion in finding that a contractual relationship existed between USA and Julisa's family regarding organ donation and, as a result, erroneously denied USA's probated claim as invalid on this basis.  But the chancellor's denial of the valid probated claim was nevertheless proper since the remaining funds in the Estate are uncollectable. "[T]his Court may affirm the chancellor's judgment if the right result was reached, even if the chancellor reached the result for the wrong reason." *Cummins*, 255 So. 3d at 1258-59 (citing *Davis v. City of Jackson*, 240 So. 3d 381, 384 (Miss. 2018)).  Finally, the chancellor's exercise of jurisdiction over USA's "hospital lien claim" and his determination regarding the validity of that claim were clearly erroneous and are reversed and rendered.

¶31.   **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

   **KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. RANDOLPH, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

13